Submitted on demurrer to writ December 11, demurrer sustained January 4, 1916.

## STATE EX REL. *v.* HARE.

(153 Pac. 790.)

**Taxation—Necessity for Estimate of Amount to be Raised Prior to Levy—Statutes.**

1. Laws of 1913, Chapter 234, page 458, provided that it shall be unlawful for any tax to be levied, proposed or adopted, for any county, unless an estimate shall have first been made of the amount of money proposed to be raised as provided therein, and that such estimate shall be fully itemized, showing under separate heads the amount required for each department of county government, county office, or county officer, for each county improvement, the maintenance of each county building, structure or institution, for the salary of each county officer or employee, provided, that employees of like salary in each department of county government may be listed by the number of such employees, the amount of each salary and the amount of their combined salaries, for the improvement and maintenance of public highways, roads, streets and bridges, and for the construction, operation and maintenance of each public utility. *Held* that a substantial and not a technical compliance with the law is required, and that it is sufficient to state in one item the amount estimated for roads, bridges, supervisor's salaries, and repairs on machinery and supplies, without designating separately the amount for the improvement, and for the maintenance of each public highway and for each road, bridge, street, etc., for such details are not within the mandate of the law, though if a considerable amount of money was to be raised for the construction or improvement of any particular highway or structure, in order to fully inform the taxpayer, it should be mentioned.

**Taxation—Estimate of Amount Necessary to be Raised Before Levy—Statutes.**

2. Laws of 1913, Chapter 234, page 458, requiring an itemized estimate of the amount required to be raised before any tax can be levied for county purposes, and Section 6314, L. O. L., providing that county courts shall appoint a road supervisor for each road district in the county, and Section 6319, L. O. L., providing that every road supervisor shall receive for each day necessarily employed in the performance of his duties, the sum of $2.50, *held* that road supervisors are road district officers, and not salaried county officers or employees, and payment for their services was properly included in the estimate and under the heading "for expenses of roads and bridges," and no one could be injured by such listing.

**Taxation—Estimate of Amount to be Raised Sufficiently Complies With Statute.**

3. Under Sections 2985, 2987, 6319, L. O. L., and Laws of 1913, Chapter 234, page 458, *held* that in the annual budget or estimate of expenses preceding the county tax levy, an item for salaries, surveys and engineering of the surveyor's office was sufficiently itemized.

**Taxation—Estimate of "County Expenditures" Enumerated Prior to Tax Levy—Statutes.**

4. Under Laws of 1913, page 686, providing that district attorney in each county shall be paid by the state the salary therein specified, *held* that the district attorney's salary was not a county expenditure required to be enumerated in the estimate of county expenses preceding the tax levy as required by Laws of 1913, Chapter 234, page 458.

**Mandamus—Questions must be of Sufficient Importance.**

5. The matter involved, in order to justify *mandamus* must be substantial, and of sufficient importance to invoke the use of the remedy.

[As to taxpayers' actions, see note in Ann. Cas. 1913C, 895.]

**Mandamus—Unjust Claims or Correction of Errors not Grounds for Issuance.**

6. The writ of *mandamus* is used to promote principles of justice, and will not issue to support unjust claims, although technically regular, neither will it be employed for the correction of errors.

**Mandamus—Necessity to Demand a More Specific Estimate Before Mandamus is Granted.**

7. It does not appear that any request was made to the County Court for a more specific estimate. As a general rule, however, where the duty to be performed by an official is of a purely public nature, and where there is no one person upon whom the right or duty devolves to make a demand for performance, an express demand or refusal is not necessary. There are exceptions to this rule, and where the proper mode of performance is doubtful, a demand specifying the proper mode will be required before the writ will be granted.

**Mandamus—Doubtful Nature of Questions Involved.**

8. *Mandamus* will issue only in cases of necessity to prevent injustice or great injury, and if there is a doubt of its necessity or propriety, it will not be issued.

Original proceeding in Supreme Court.

This is an original *mandamus* proceeding by the State of Oregon, upon the relation of S. V. Anderson against A. M. Hare, County Judge, Frank .L. Owens and George McKimens, County Commissioners, constituting the County Court of Tillamook County, Oregon. The facts involved are set forth in the opinion of the court submitted on demurrer to the writ, for the reason that the same does not state facts sufficient to entitle the relator to the relief prayed for.

DEMURRER SUSTAINED.

*Mr. T. H. Goyne,* District Attorney, and *Mr. Isaac H. Van Winkle,* Assistant Attorney General, for the demurrer.

*Mr. Frank S. Grant, contra.*

In Banc.    MR. JUSTICE BEAN delivered the opinion of the court.

This is an original proceeding in *mandamus* by the State of Oregon on the relation of S. V. Anderson, a taxpayer and resident of the county of Tillamook, against the County Court thereof, to compel it to obey the provisions of Chapter 234, Laws of Oregon for 1913, in three particulars. The first section of that act is as follows:

"It shall be unlawful for any tax to be levied, proposed or adopted, for any county, unless an estimate shall have first been made of the amount of money proposed to be raised by taxation for the ensuing year and such estimate published, and opportunity for a full and complete discussion thereof allowed in the manner hereinafter provided for. The estimates herein required shall be fully itemized, showing under separate

heads the amount required for each department of county government, county office, or county officer, for each county improvement, the maintenance of each county building, structure or institution, for the salary of each county officer or employee, including those whose salary shall be fixed by statute; provided, that employees of like salary in each department of county government may be listed by the number of such employees, the amount of each salary and the amount of their combined salaries, for the improvement and maintenance of public highways, roads, streets, bridges, the construction, operation and maintenance of each public utility, and shall contain a full and complete disclosure of the contemplated expenditures from the money or moneys proposed to be raised by taxation, showing the amount of each public expense. Said estimates shall also contain a statement of the probable receipts of the county proposing such tax from sources other than direct taxation upon the real and personal property in its jurisdiction during the period for which such tax is to be levied, and the amount of all balances, if any, on hand in the funds of said county, at the time such levy will be made. Estimates of the amounts to be raised by taxation shall be made a sufficient length of time in advance of all regular or special meetings at which by law levies are authorized to be made to permit publication as hereinafter provided."

Section 2 provides that the estimates, together with a notice of the time and place at which they may be discussed with the County Court, shall be published. Provision is also made for a meeting of the taxpayers with the members of the County Court.

Section 4 directs in part that no greater expenditure of public moneys shall be made for any specific purpose than the amount so estimated and 10 per cent additional thereof. Section 5 prescribes that:

"No tax shall be levied by the County Court except by direct vote of the people at a meeting duly and regu-

larly called as now provided by law and in accordance herewith for the purpose of levying taxes, in excess of the estimates published as aforesaid and 10 per cent thereof.''

On November 17, 1915, the County Court, endeavoring to comply with the statute referred to, found that it would require $319,238.67 to defray the expenses of that county for the year 1916, and made estimates, a portion of which are as follows:

### Road Purposes.

Roads, bridges, supervisors' salaries, repairs on machinery and supplies........$173,389.95

### Clerk's Office.

| | | |
|---|---|---|
| Clerk's salary................$1,600.00 | |
| Deputy   "   ................ | 900.00 | |
| Deputy   "   ................ | 780.00 | |
| Records, supplies and expenses. | 900.00 | 4,180.00 |

The salaries and office expenses of sheriffs and other county officers were estimated in the same manner.

### Surveyor's Office.

Salaries, surveys and engineering..........$2,500.00

—and the district attorney's office, $2,000. The various items aggregated the amount estimated necessary to be raised.

Complaint is made of the manner of itemizing under three separate heads, namely, "Road Purposes," "Surveyor's Office," and "District Attorney's Office." The alternative writ sets forth:

"That said defendant, County Court, in said estimate under the heading therein, 'Road Purposes' has only set out the aggregate sum proposed to be raised out of the money or moneys received from taxes for the year 1916, for road purposes, and has not, in said

estimate, fully itemized, or set out, under separate heads, the separate amounts which make up said aggregate sum, and required for the (1) improvement, or (2) maintenance, of each public highway, (3) each road, (4) each street, (5) each bridge, (6) the number of supervisors required, (7) the amount of the salary of each, (8) or the amount of their combined salaries, (9) the amount necessary for repairs to machinery, (10) or the amount necessary for supplies. That under the head 'Surveyor's Office,' is set out the items 'salaries, surveys and engineering,' with the aggregate sum $2,500; but said defendant County Court has not fully itemized under separate heads the (1) number of employees in said surveyor's office; (2) the amount of salary of each employee; (3) the total amount of salaries for said office; (4) the cost of surveys; and (5) the cost of engineering. That under the item 'District Attorney's Office,' said defendant County Court has not fully itemized under separate heads (1) the salary of the district attorney; (2) supplies of said office; (3) or other expense of said office, but has given only the aggregate amount. That said defendant County Court has not given to the taxpayers of said county, a full and complete disclosure of the contemplated expenditures from the money or moneys proposed to be raised by taxation, for the year 1916, for road purposes, surveyor's office, and district attorney's office.''

The defendants demur to the writ for the reason that the same does not state facts sufficient to entitle the relator to the relief prayed for.

1. It appears that the County Court made a faithful, painstaking effort to comply with the requirements of the statute. While the result is commendable, it may not be perfect from a technical point of view. Neither is it plain that the relator is legally correct in all his claims. The obvious purpose of the law is to have an estimate of county expenditures made and published, together with the total amount of taxes

levied by any road or school district, city, port or other tax levying authority within the jurisdiction of the county in order that the taxpayers may be informed approximately the amount proposed to be levied against their property and the purposes for which it is to be expended, in order that those upon whom the tax burden rests may oppose or favor any such levy in a discussion with their officers. The statute was not intended to stop the wheels of progress or to be a stumbling block. Taking up the estimates under the three heads complained of, in their order, and looking at the law, we find that it directs an estimate to be fully itemized showing under separate heads the amount required for each department of county government, each county improvement, and maintenance of each county building, etc. When we come to the matter of highways, we find embraced in one group "for the improvement and maintenance of public highways, roads, streets, bridges." The contention of the relator as set forth in the petition and the writ is that specific separate amounts should be designated and expended for the (1) "improvement," (2) or "maintenance," of each public highway, and (3) each road, etc. To distinguish in all cases between an improvement and a maintenance would be exceedingly difficult, if not impossible. We do not perceive that for the purpose of the estimate, the law recognizes a difference between "highways" and "roads." Neither does it require that a street should be given a separate heading. Pursuant to an old custom, bridges are embraced in the same category with roads and highways, yet the relator requests an estimate for "each highway," "each road," "each street," and "each bridge." Such a construction of the statute would be practically injecting into the same the word "each" where it is

not found.   The law does not indicate what would be termed a road or highway, or whether it should be designated by name, description or number, as laid out and established, which would seem to be essential if it contemplated a compliance with the relator's demands.   Doubtless, if a considerable amount of money was to be raised for the construction or improvement of a particular highway or structure, in order to conform to the spirit of the law and to fully inform the taxpayer, it should be mentioned.   That the technical nicety suggested is mandatory in all cases, we cannot concede.   Substantially the same difficulties would be encountered were an attempt made to segregate the amount necessary for repairs on machinery from that which would be required for supplies.   Such details are not within the mandate of the law.

2. Exception is taken by the relator because the number of road supervisors and the amount of the salary of each are not given in the estimate.   These positions are filled by appointment under Section 6314, L. O. L., and their *per diem* compensation fixed by Section 6319, L. O. L.   They are road district officers and do not come within the class of salaried county officers or employees within the meaning of the law.   Payment for their services is properly included in the expenses of roads and bridges, and no one could be misled or injured by such listing.   There was therefore a substantial compliance with the enactment as to public highways.

3. Under the head of "Surveyor's Office" the writ is predicated upon the theory that the surveyor of this county has a retinue of regular salaried employees. It is not alleged that he has such a force, nor do we know it as a matter of law.   Except in counties having 39,000 or more inhabitants, under Sections 2985 and

6319, L. O. L., and other statutes, the county surveyor is paid a *per diem* or according to the fee system. That official is authorized to appoint assistants such as chainmen and markers, etc., the maximum of whose compensation per day is fixed by Section 2987, L. O. L. No approximately correct estimate of the expenses of such casual assistance could be made, and the statute does not require it. Neither do we believe the law presumes that the County Court could separate the estimate of the "cost of surveys" from the "cost of engineering." It would seem that if such a segregation of expenses were necessary, the matter should be left to a skilled civil engineer. The writer, not being one, gladly leaves this subject. In legal questions we always expect to find some difficulties.

4. When we come to the district attorney's office there seems to be some misunderstanding as to the law. The relator desires first that the salary of the district attorney be specified. It is only county expenditures that are to be enumerated. In 1913 the legislature provided for a district attorney in each county of the state, and directed that his salary be paid by the state, fixing that of the district attorney for Tillamook County at $1,200 per annum (Gen. Laws 1913, p. 66), so that the county is not required to bear this burden alone. The present regime has not been long in vogue, and the County Court might not have had much data from which to estimate the expenses of this office separately.

5. In making the 58 estimated items of county expenditures for the coming year, as shown by the writ, 3 of which are complained of, the members of the County Court did not evince any willful disregard of their duty. Neither does it appear that their action was extremely wrong or flagrantly improper: See *State*

*ex rel.* v. *Bare,* 60 W. Va. 483 (56 S. E. 390). Indeed, it did not occur to the learned counsel for the relator to assert that by reason of the generalization of the estimated items the petitioner and other taxpayers were unable to gain sufficient information to intelligently discuss the questions with their county servants. On the whole it does not appear that the writ is necessary in order that justice may be done in accordance with the statute. The matter involved must be substantial and of sufficient importance to justify the use of the remedy: 26 Cyc. 156.

6. The writ is employed to promote principles of justice. It will not issue in support of unjust claims, although they may be technically regular: 26 Cyc. 155; 19 Am. & Eng. Ency. Law, section 737, states the rule and its exception thus:

"The writ cannot be used for the correction of errors. If, however, such judgment or discretion is abused, and exercised in an arbitrary or capricious manner, *mandamus* will lie to compel a proper exercise thereof."

7. No suggestion is alleged to have been made to the County Court for a more specific estimate. As a general rule, where the duty to be performed by an official is of a purely public nature, wherein no individual right or duty is concerned, and where there is no one person upon whom the right or duty devolves to make a demand for performance, an express demand or refusal is not necessary: See Spelling, Ex. Relief, § 1381. The law does not require a useless thing. But there are exceptions to this rule. Where the proper mode of performance is doubtful, a demand specifying the proper mode will be required before the *mandamus* will be granted: Merrill, Mandamus, § 224, p. 279.

8. It is also stated by the last-named authority that:

"When a *mandamus* is asked by a private party to compel a public officer to keep his books in a certain way, in order to conform to the statute, he must have requested the officer to do so before he asks for a *mandamus,* because there are often differences of opinion as to the construction of a statute, and the officer should have an opportunity to act on the relator's construction before being involved in litigation."

See, also, *State* v. *Eberhardt,* 14 Neb. 201 (15 N. W. 320). This case, upon which the latter part of the text is based, is the nearest in point of any authority we find: See *Women's Catholic Order of Foresters* v. *Condon,* 84 Ill. App. 564; *Ingerman* v. *State,* 128 Ind. 225 (27 N. E. 499). In the matter under consideration the estimates prepared for publication indicate that the County Court was willing to fully comply with the law, and there appears no refusal to adhere to any reasonable demand if one had been made, thus bringing the case within the exception noted: *People* v. *Dulaney,* 96 Ill. 503; *State* v. *Sunset Tel. Co.,* 30 Wash. 676 (71 Pac. 198); *In re White River Bank,* 23 Vt. 478. The writ will only issue in cases of necessity to prevent injustice or great injury. If there is a doubt of its necessity or propriety, it will not go: 26 Cyc. 146.

For the different reasons referred to, the demurrer to the writ should be sustained, and it is so ordered.

DEMURRER SUSTAINED.